IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                              CASE NO. 07-06946

JORGE ALBERTO JIMENEZ                               CHAPTER 1*3*
GALINDEZ AND ALMA RAQUEL
GARCIA COLON

    Debtors

FILED AND ENTERED ON 07/31/14

OPINION AND ORDER

This case prompts the court to determine whether the binding effect of a confirmed chapter 13 plan prevails over a claim deemed allowed under the claims allowance process. The issue comes before the court upon Banco Santander Puerto Rico's (hereinafter referred to as "BSPR") *Objection to Final Report and Account* (Docket No. 63). BSPR requests the court to deny the approval of the Chapter 13 Trustee's (hereinafter referred to as "Trustee") Final Report and Account alleging that claim number 4-2 was amended on July 17, 2012 to increase the amount claimed in pre and post-petition arrears; and that since the same has not been objected to, it is deemed allowed, and must be fully paid. BSPR filed its *Memorandum of Law* arguing that the disbursements should have been made according to the amended claim #4-2 filed by BSPR, which supersedes claim #5 filed by the Debtor on behalf of BSPR, and not pursuant to the terms of the plan dated October 3, 2011, the modified plan after confirmation (Docket No. 72). The Trustee filed his *Reply to Objection to Final Report and Account and Memorandum of Law in Support Thereof* (Docket No. 74) arguing that the plan does not provide for the payment of amended claim #4-2 and thus, the Trustee made correct disbursements pursuant to the terms of the post-confirmation modified plan. The Debtors filed their *Memorandum of Position Re: Santander's Objection to Final Report and Account* stating that it is the Trustee's responsibility to administer the plan and that the Debtors' plan provided sufficient funds to pay claim #4-2 or

-1-

claim #5. The Debtors further argue that during the hearing on the request to lift the automatic stay filed by BSPR the Debtors and BSPR arrived at a "cure" amount and provided for it in the confirmed plan, as modified, and paid the same (Docket No. 75). For the reasons set forth below the court denies BSPR's *Objection to Final Report and Account*.

Jurisdiction

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(B). Venue of this proceeding is proper under 28 U.S.C. §§1408 and 1409.

Facts and Procedural Background

The Debtors filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code on November 28, 2007. The Debtors included in Schedule D (Creditors Holding Secured Claims) BSPR's secured mortgage debt in the amount of $86,419.07. The 341 meeting was held and closed on January 8, 2008. Creditors and parties in interest did not file objections to confirmation and the Trustee recommended the plan dated November 16, 2007 (Docket No. 13). On February 11, 2008, the court entered an Order confirming the Debtors' Chapter 13 plan dated November 16, 2007 (Docket No. 15).

On March 17, 2008, BSPR filed claim #4-1 but did not file the Official Form 10 required for a proof of claim. BSPR only filed the supporting documentation for its claim, which consisted of the following documents: (i) a Note dated August 31, 2005; (ii) the First Mortgage Deed dated August 31, 2005; (iii) the first page of a title study; and (iv) a statement of account dated February 5, 2008 which provided the following account detail: (a) principal balance as of 02/05/08 in the amount of $84,542.73; (b) accrued interest from 01/01/08 to 02/05/08 in the amount of $454.39; and (c) the bankruptcy fees in the amount of $450.

On September 30, 2011, BSPR filed a *Motion for Relief from Stay* pursuant to 11 U.S.C. §362(d)(1) and (d)(2) due to Debtors' failure to make post-petition payments on its mortgage note (Docket No. 32). BSPR in its *Motion for Relief from Stay* included as Exhibit A a Verified Statement by Ingrid Cruz, Manager Legal Division & Bankruptcy Dept., which ascertains that as

of September 29, 2011, the accuracy of the information kept in the accounting books and records kept by BSPR showed the following information for loan number 1399: (i) total payments due equal four (4), of which zero (0) are pre-petition and four (4) are post-petition which amount to $3,239.84 ($809.96 x 4= $3,239.84), plus late charges which amount to $156.44 ($39.11 x4 = $156.44), plus $250 in attorneys' fees, and $150 in filing fees, for a total sum of $3,796.28 (Docket No. 32, Exhibit A). On October 5, 2011 the Trustee filed his *Position* regarding BSPR's motion requesting relief from the automatic stay stating that since the confirmed plan provides for direct payments to movant, the Trustee cannot make an informed opinion as to their compliance with such payments (Docket No. 36).

On October 5, 2011, the Debtors filed a *Motion for Post Confirmation Amendment of Chapter 13 Plan* [*sic*] ("PCM") requesting to modify their confirmed Chapter 13 plan to include post-petition mortgage arrears with BSPR in the amount of $3,396.28. The Debtors disclosed that they fell behind on their mortgage payments because they had extraordinary monthly utilities expenses in the past months (Docket No. 37). On October 5, 2011, the Debtors also filed their *Answer to Motion Requesting Relief from the Automatic Stay filed by Banco Santander Puerto Rico* stating that they filed a motion for post confirmation modification to include post-petition arrears with secured creditor BSPR and, thus, request the court to deny BSPR's motion requesting relief from the automatic stay and approve the post confirmation plan modification dated October 3, 2011 (Docket No. 38). On October 5, 2011, the Debtors filed proof of claim #5-1 on behalf of secured creditor BSPR and included that the basis of the claim is for post-petition mortgage arrears in the amount of $3,396.28, that the amount of the secured claim is $86,419.07 and that the value of the property is $110,000.

On October 24, 2011, the Trustee filed an *Amended Trustee's Unfavorable Report on Proposed Post Confirmation Plan Modification* pursuant to 11 U.S.C. §1325(a)(6) due to lack of feasibility. The Trustee alleges that the Debtors are $770 (2 months) in arrears under the proposed plan. The Trustee stated that the Debtors must be up to date with plan payments in order to receive a favourable recommendation (Docket No. 41).

On October 25, 2011 a hearing on the motion to lift the automatic stay was held in which the court ordered the Debtors to provide adequate protection to BSPR by providing evidence of being current until October 20, 2011, plus attorneys' fees, within twenty (20) days (Docket No. 42). On the same date, the court granted the Debtors' Motion for Post Confirmation Modification of Plan (Docket No. 43).

On November 9, 2011, the Debtors filed a *Motion to Inform Re: Compliance with Lift of Stay Agreement* by which they inform the court that: (i) pending is a motion filed by BSPR to lift the automatic stay and the agreement of the parties to maintain the automatic stay in place; and (ii) attached hereto is evidence that the Debtors are current with their mortgage payment for the month of October 2011 and, as agreed to, have paid the $400 in legal fees. The Debtors requested that BSPR's motion to lift the automatic stay be denied (Docket No. 46). No action was taken by the court. However, the motion stands unopposed. Thus, the same is deemed granted.

On July 17, 2012, BSPR filed amended proof of claim #4-2 stating that the amount of pre-petition and post-petition arrears up to September 2011 was $5,093.56 and that the amount of the secured claim was $85,676.86. BSPR included as supporting documents, a Mortgage Proof of Claim Attachment A, which is a claim supplement that is divided in three (3) parts. Part 1 is titled "Statement of Principal and Interest Due as of the Petition Date" and it lists the principal due in the amount of $85,673.86, and states there is no interest due. Part 2 is titled "Statement of Prepetition Fees, Expenses, and Charges" and includes the following: (i) late charges incurred on 11/28/2007 in the amount of $195.55; and (ii) attorney's fees incurred on 11/28/2007 in the amount of $850.00, for a total of $1,045.55. Part 3 is titled "Statement of Amount Necessary to Cure Default as of the Petition Date" and lists that there are 5 installment payments due which consist of 4 installments of $809.96 and 1 installment of $808.17, for a total of $4,048.01 due as of the petition date, plus the total prepetition fees, expenses and charges ($1,045.55); for a total amount of $5,093.56 necessary to cure default as of the petition date. Subsequently, on

-4-

September 28, 2012, BSPR filed a *Notice of Post Petition Mortgages Fees, Expenses and Charges* listing the post-petition payments due, as well as other charges for a total of $3,796.28.

On February 5, 2013, the Debtors filed a *Motion in Response to Notice of Post-Petition Mortgage Fees by Banco Santander Related to Claim 4* stating that they do not dispute the Notice to the extent that it is a perfunctory filing by BSPR and not meant to reflect any actual arrears due from the Debtors. Debtors contend that the monies owed to BSPR were paid through the plan (Docket No. 55). On February 26, 2013, the Trustee filed the *Notice of Final Cure Payment* pursuant to Fed. R. Bankr. P. 3002.1(f) including the amount required to cure the default in the claim listed. The Trustee listed claim #4-02 for account number 1399 and the amount of the claim allowed was listed as $3,396.28 and the amount paid was listed as $3,396.28 (Docket No. 56).

On June 12, 2013, the *Trustee filed a Positive Standing Certification Related to Discharge Pursuant to 11 U.S.C. §1328(a), (f), (g)(1), (h) and Rules 1007(b)(7) & (8) of the FRBP and LBR 3015-2(j)* requesting the court to enter an Order discharging the Debtors after the Trustee's Final Report has been approved (Docket No. 58). On the same date, the Trustee filed its *Final Report and Account* indicating that the case had been completed on January 30, 2013 and that he had paid throughout the plan the amount of $3,396.28 to BSPR (Docket No. 59). Page 3 of the Trustee's Final Report and Account lists the claim allowed for the mortgage arrearage is in the amount of $5,093.56, and that the principal paid was $3,396.28. On June 13, 2013, the court granted the Debtors the discharge (Docket No. 61).

On June 18, 2013, BSPR filed its *Objection to Final Report and Account* presenting the following arguments: (i) that on March 17, 2008, BSPR filed "secured claim number 4 in the amount of $85,447.12 and claimed the amount of $3,396.28 in pre-petition arrears;" (ii) claim number 4 was amended on July 17, 2012 to increase the amount claimed in pre and post-petition arrears which totalled $5,093.56; (iii) claim number 4-2 has not been objected to and thus is deemed allowed pursuant to Section 502(a); (iv) according to the Trustee's Final Report and Account he paid $3,396.28 to BSPR on account of the pre-petition arrears, thus the Debtors still

owe BSPR the amount of $1,697.28 of the pre and post-petition arrears; and (v) "[a] cursory review of the confirmed plan shows Debtors' intention to cure all the pre-petition and post-petition arrears through the payments made to the Trustee under the plan. The plan was confirmed pursuant to the provisions of Sections 1322(a)(5), 1325(a)(5) of the Code and thus the provisions are binding to all parties pursuant to the provisions of §1327(a) of the Code" (Docket No. 63). On July 2, 2013, the Trustee filed a Motion for Extension of Time to Reply Banco Santander de Puerto Rico's Objection to Final Report and Account (Docket No. 63) requesting an extension of seven (7) days to file his position (Docket No. 66). The request was granted on July 3, 2013 (Docket No. 67).

On September 4, 2013, a hearing was held to consider the Trustee's Final Report and Account and the Objection filed by BSPR. The Court found that the following facts were uncontested: (1) the plan payments were completed; (2) the Discharge Order was entered on June 13, 2013 (Docket No. 61); (3) BSPR proof of claim #4-2 was not paid in full; (4) disbursements by Trustee were made in accordance with the plan and not claim #4-2; (5) proof of claim #4-2 was not objected to; and (6) proof of claim #5 was filed by the Debtors. The court ordered the parties to file briefs on their respective legal positions within twenty-five (25) days (Docket No. 69).

On September 25, 2013, BSPR filed its *Memorandum of Law* arguing that: (i) pursuant to 11 U.S.C. §502(a) a claim is deemed allowed if no one objects to the same; (ii) the Trustee also has the duty to examine and object to any claim considered improper pursuant to 11 U.S.C. §1302(b)(1) which includes the duties specified in 11 U.S.C. §704(a)(2) and (a)(5); (iii) the Trustee's duty to examine claims is not limited for the purposes of objections to their allowance only, but also to determine the sufficiency of the plan and the Debtors' position regarding such claim, as he is accountable for all property received, including the monies to fund the plan; (iv) BSPR's amended claim #4-2 supersedes claim #5 filed by the Debtors pursuant to 11 U.S.C. §502(j); and (v) in our jurisdiction the binding effect of the plan set forth under 11 U.S.C. §1327 is considered as a separate process from the allowance or disallowance of a claim (Docket No.

72). On September 30, 2013, the Trustee filed his *Reply to Objection to Final Report and Account and Memorandum of Law in Support Thereof* arguing that: (i) BSPR did not file an objection to the PCM or to the amounts of arrears listed in the PCM and proof of claim #5; (ii) the Trustee made disbursements of proof of claim #5 in conformity to the PCM; (iii) the face of proof of claim #4-2 does not distinguish between pre-petition and post-petition arrears; (iv) Section 1327(a) provides that all debtors and creditors are bound by the terms of a confirmed plan, even if such plan does not provide for a creditor's claim. If a debtor files a modified plan under 11 U.S.C. §1329, and such modification is approved by the court, the modified plan becomes the confirmed plan in the case pursuant to 11 U.S.C. §1329(b)(2); (v) the Trustee is obligated to make disbursements according to the terms of a confirmed plan pursuant to 11 U.S.C. §1326(c); (vi) during the hearing held on October 25, 2011, BSPR agreed to the terms of the PCM, which only included the payment of post-petition arrears in the amount of $3,396.28 which corresponds to the amount listed in the motion to lift the automatic stay filed by BSPR (Docket No. 32); (vii) BSPR did not object to the amount of arrears paid by the Trustee through the PCM in February when the Trustee filed the Notice (Docket No. 56); and (viii) BSPR is prevented from requesting any additional amounts by the doctrine of laches since its unreasonable delay in presenting an objection in the amount owed for arrears would cause prejudice to the Trustee, who made correct disbursements pursuant to the PCM and should not be obligated to make a recovery, and to Debtors who would have to pay an amount that was not claimed until shortly before the end of the plan completion, and to the unsecured creditors who already received payments (Docket No. 74). On October 3, 2013, the Debtors filed their *Memorandum of Position Re: Santander's Objection to Final Report and Account* stating that it is the Trustee's responsibility to administer the plan and that the Debtors' plan provided sufficient funds to pay claim #4-2 or claim #5. Debtors further state that during the hearing for the request to lift the automatic stay by BSPR the Debtors and BSPR arrived at a "cure" amount and provided for it in the confirmed plan as modified and paid it. The Debtors complied with the law and the confirmed plan and received a discharge (Docket No. 75).

The controversy before the court is whether the Trustee should have paid in conformity to the post confirmation modified plan pursuant to 11 U.S.C. §§1326(c), 1327(a) and 1329(b)(2) or whether the Trustee had to disburse the monies according to the allowed amended claim pursuant to 11 U.S.C. §§502(a) and 1302(a) & (b)(1). The core issue is whether an allowed amended claim pursuant to section 502 trumps the binding effect of a confirmed plan, in this case a post confirmation modified plan under sections 1327(a) and 1329(b)(2), when the secured creditor was duly notified of the proposed plan and the subsequent proposed post confirmation plan modification which clearly disclosed the treatment regarding the payment of the post-petition mortgage arrearages.

The court will first discuss the following factors: the claims allowance process, allowance of amended claims, and the binding effect of a confirmation order. After discussing these, we will then address the tension between claims allowance and plan confirmation. In addition, we will consider the effect of the Espinosa decision and the impact of Fed. R. Bankr. P. 3002.1.

Applicable Law and Analysis

*Claims Allowance Process*

The importance of the claims allowance process is heightened in chapter 13 cases because a confirmed plan may not provide for a particular claim or a specific amount for such a claim. This situation arises in chapter 13 cases when the plan gets confirmed before the bar date for filing proofs of claims. Generally, the amount of the claim must be determined through the claims allowance process. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶13727.02[2] (16th ed. 2014).

Section 501(a) provides that: "[a] creditor or an indenture trustee may file a proof of claim. An equity security holder may file a proof of interest." 11 U.S.C. §501(a). Fed. R. Bankr. P. 3001(a) provides that: "[a] proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form." Fed. R. Bankr. P. 3001(f). Moreover, Fed. R. Bankr. P. 3004 provides that: "[i]f a creditor does not timely file a proof of claim under Rule 3002(c) or 3003(c), the debtor or trustee may file a proof

of claim within 30 days after the expiration of the time for filing claims prescribed by Rule 3002(c) or 3003(c), whichever is applicable. The clerk shall forthwith give notice of the filing to the creditor, the debtor and the trustee." Fed. R. Bankr. P. 3004.

Section 502(a) provides that: "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. §502(a).  Fed. R. Bankr. P. 3001(f) provides: "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Thus, claims for which proper proofs have been filed are deemed allowed unless an objection is filed.

Parties in interest that may object to proofs of claims are Trustees, debtors in chapters 12 and 13, and debtors in possession in chapter 11. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶502.02[2] (16th ed. 2014).  The Federal Rules of Bankruptcy Procedure and the Bankruptcy Code do not establish a bar date or deadline for filing objections to claims and confirmation of a plan does not create a bar to such objections. See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1327.02[2] (16th ed. 2014).

Section 1302(b)(1) provides that the Trustee shall, "perform the duties specified in sections 704(a)(2), 704(a)(3), 704(a)(4), 704(a)(5), 704(a)(6), 704(a)(7), and 704(a)(9) of this title." 11 U.S.C. §1302(b)(1). Section 704(a)(5) provides that the Trustee shall, "if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper." 11 U.S.C. §704(a)(5). "Thus, a trustee has not only the right but the duty to object to any claim not entitled to allowance against the estate's assets. A debtor in possession also holds this duty. For practical purposes, the dominant party in interest for the purpose of taking objection to a creditor's claim is the trustee." See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶502.02[2][a] (16th ed. 2014).  In chapters 12 and 13 cases, the trustee generally "does not view it as his or her role to object to particular claims except, perhaps, if they have been tardily filed." Id. at ¶502.02[2][c].  In chapter 13 cases, "… the success of the debtor's plan

may depend upon the debtor's being able to argue successfully that the debt asserted as a priority claim or a secured claim, which most often be paid in full, is excessive or invalid." Id. Section 521(a)(3) provides that "if a trustee is serving in the case or an auditor is serving under section 586(f) of title 28, [the debtor shall] cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties under this title." 11 U.S.C. §521. Fed. R. Bankr. P. 4002(a)(4) provides that: "[i]n addition to performing other duties prescribed by the Code and rules, the debtor shall: -- (4) cooperate with the trustee in the preparation of an inventory, the examination of proofs of claim, and the administration of the estate." Fed. R. Bankr. P. 4002(a)(4). "The proper procedure under section 704(a)(5) is for the trustee to request that the debtor examine the proofs of claims and report to the trustee as to whether they are proper." See Alan N. Resnick & Henry J. Sommer, 6 Collier on Bankruptcy ¶704.08[1] (16[th] ed. 2014). Thus, "[r]eviewing and objecting to claims is a power shared by the Chapter 13 debtor and the trustee. In some jurisdictions, the trustee prepares a 'motion to allow claims' at the close of the claims filing period and the principal responsibility to object to claims then falls on the debtor. It is difficult for the Chapter 13 trustee to know which claims are correct and which are not. The debtor typically has the information necessary to make that assessment. Even in some jurisdictions where the Chapter 13 trustee files objections to claims, the trustee needs help from the debtor to identify objectionable claims." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4[th] Edition, §62.1, at ¶[2], Sec. Rev. Apr. 30, 2004, www.Ch13online.com.

In this case neither the Debtors nor the Trustee filed a motion directly objecting the amended proof of claim (#4-2) filed by BSPR.

*Amendment of Claims*

The Bankruptcy Code does not specifically address the issue of amending a timely filed proof of claim. "Although there is no mention of amended claims in §501 of the Code, a proof of claim that amends a prior claim probably is 'filed under section 501' and thus is 'deemed allowed' by 502(a) absent objection." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §284.1, at ¶3, Sec. Rev. May 5, 2010, www.Ch13online.com. The

-10-

established precedent in the First Circuit is that amendments to claims are freely allowed. "Amendments to proofs of claim timely filed are to be freely allowed, whether for purposes of particularizing the amount due under a previously-asserted right to payment, or simply to cure technical defects in the original claim." In re Hemingway Transp., 954 F. 2d 1, 10 (1st Cir. 1992); See also; In re Crane Rental Co., 341 B.R. 118, 120 (Bankr. D. Mass. 2006) ("Amendments to proofs of claim are 'to be freely allowed as long as the purpose of the amendment is to cure a defect in the claim, to describe the claim with greater particularity, or to plead a new theory of recovery.'") citing In re Callery, 274 B.R. 51, 56 (Bankr. D. Mass. 2002). The Chapter 13 debtor and trustee should object claims that are improperly filed or classified.

Upon the filing of an objection, the allowance of an amended proof of claim is an equitable determination often approached using a two-part test: (1) was a timely similar claim asserted against the bankruptcy estate by a prior formal proof of claim or informal proof of claim; and (2) is it equitable to permit the amendment." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §284.1, at ¶[3], Sec. Rev. May 5, 2010, www.Ch13online.com. Thus, the first step is to determine whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the bankruptcy estate liable. If the first prong is satisfied, then the court must determine whether it was equitable to allow the amendment. "The equitable determination to allow or disallow an amendment to a proof of claim timely filed is entrusted to the sound discretion of the bankruptcy court." In re Hemingway Transp., 954 F. 2d at 10. "The court must scrutinize both the substance of the proposed amendment and the original proof of claim to ensure that the amendment meets three criteria." Id. Amendments to proof of claims are reviewed under the following three (3) criteria: (i) "the proposed amendment must not be a veiled attempt to assert a distinctly new right to payment as to which the debtor estate was not fairly alerted by the original proof of claim;" (ii) "the amendment must not result in unfair prejudice to other holders of unsecured claims against the estate;" and (iii) "the need to amend must not be the product of bad faith or dilatory tactics on the part of the claimant." Id; See also; In re Crane Rental Co., 341 B.R. at 120-121. Moreover,

"[t]here is no deadline in the Rules or Code after which amendment of claim is prohibited. Theoretically, a timely filed proof of claim can be amended at any time while the case is pending, at least until payments are completed under the plan." Id. at §284.1, at ¶[14]. However, a balance must be attained in the bankruptcy process since "an amended claim is not a backdoor objection to confirmation." Id. at §284.1, at ¶[24]. However, the court is forced to consider the effect that filing the amended claim has on the confirmed plan as it is the underlying reason for the objection to the Trustee's final report filed by BSPR. Although in the instant case there is no separate written objection to the amended proof of claim.

*Binding Effect of Plan Confirmation on Secured Claims*

A chapter 13 plan may only be confirmed if it complies with section 1325(a)(1)[1], which references other applicable provisions of this chapter, including section 1322. "Section 1325(a)(5), in turn, references secured creditors and mandates plan confirmation if (1) the secured creditor accepts the plan; (2) the plan provides that the secured creditor retain its lien and be paid the full amount of the allowed claim; and (3) the debtor surrenders the property securing the claim to the creditor." Universal Am. Mort. Co. v. Bateman (In re Bateman), 331 F. 3d 821, 829 (11th Cir. 2003).

Section 1327(a) provides that; "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. §1327(a). "Section 1327(a) is a strong statement: The terms of a confirmed plan are legal obligations of the debtor and all creditors without regard to whether the plan provides for the creditor's claim and without regard to whether the creditor participated in the confirmation process." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶[1], Sec. Rev. Oct. 8, 2010, www.Ch13online.com. "Plan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy of favoring finality." Factors Funding Co. v. Fili (In re Fili), 257

---

[1] Section 1325(a)(1) provides: "[e]xcept as provided in subsection (b), the court shall confirm a plan if – (1) the plan complies with the provisions of this chapter and with other applicable provisions of this title." 11 U.S.C. §1325(a)(1).

B.R. 370, 373 (B.A.P. 1st Cir. 2001). "The binding effect of §1327(a) applies with full force to modification of confirmed plans, provided that modification is properly noticed." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶[25], Sec. Rev. Oct. 8, 2010, www.Ch13online.com. "Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. The *res judicata* effect of confirmation may be eliminated only if confirmation is revoked or if the case is later dismissed or converted to another chapter." See Alan N. Resnick & Henry J. Sommer, 8 Collier on Bankruptcy ¶1327.02[1] (16th ed. 2014).

Lundin and Brown discuss the difference between the *res judicata* effect of a judgment and the binding effect of a confirmed plan under section 1327(a) and conclude that an order confirming a plan has a binding effect rather than having a *res judicata* effect which is applicable to judgments having a preclusive effect in other cases. "Perhaps more importantly, the statutory formulation of binding effect in §1327(a) is broader than the res judicata effect of an ordinary judgment in the federal courts. A confirmed plan binds even creditors that are not provided for by the plan and without regard to whether the creditor responded to the proposed plan by acceptance or rejection." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶[5], Sec. Rev. Oct. 8, 2010, www.Ch13online.com. Lundin and Brown also comment that:

> "The Ninth Circuit in Espinosa v. United Student Aid Funds, Inc., explained the important distinction between the res judicata effect of a confirmation order and the statutory effect of confirmation under §1327(a). Res judicata applies to 'giving the judgment in the bankruptcy case preclusive effect in another case.' When the context is enforcement of the confirmation and discharge orders in the bankruptcy court that issued them, res jusdicata is not in play; rather, the binding effect of confirmation is often realized, as it was in Espinosa, through the discharge injunction." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶[6], Sec. Rev. Oct. 8, 2010, www.Ch13online.com.

-13-

The First Circuit Bankruptcy Appellate Panel in New Hampshire v. McGrahan (In re McGrahan), 459 B.R. 869 (B.A.P. 1st Cir. 2011) discussed the binding effect of a confirmed plan pursuant to section 1327(a) and stated:

> "Under this provision, once a bankruptcy plan is confirmed, the debtor and each creditor are bound by its terms. See Id. [referencing 11 U.S.C. §1327(a)]. As the First Circuit has explained, 'confirmation of a Chapter 13 plan customarily is res judicata as to all issues that were or could have been decided during the confirmation process.' Carvalho v. Fannie Mae (In re Carvalho), 335 F. 3d 45, 49 (1st Cir. 2003). 'There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order.' 4-1327 Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual, ¶ 1327.02[1] (3d. ed. Rev.). The United States Supreme Court has emphasized that plan confirmation orders are final and binding regardless of pre-confirmation rights held by creditors. See United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010).
>
> The binding effect of confirmation has led courts to conclude that once a plan is confirmed, a creditor's rights and interests are defined within the boundaries of the plan, and proceedings that are inconsistent with the confirmed plan are improper, even if they fall within an exception to the automatic stay." In re McGrahan, 459 B.R. at 874.

In Burrell v. Town of Marion (In re Burrell), 346 B.R. 561, 570 (B.A.P. 1st Cir. 2006), the First Circuit Bankruptcy Appellate Panel also emphasized the importance of the binding effect of the confirmation order and the finality that the same provides to the bankruptcy proceedings, irrespective of whether a secured claim was improperly treated in a plan. In Burrell, the Bankruptcy Appellate Panel concluded:

> "The allowance of the Town's secured claim for prepetition real estate taxes and water claims was res judicata on the amount of its claim. See In re Bernard, 189 B.R. 1017 (Bankr. N.D. Ga. 1996) (concluding that confirmation implicitly determines the issue of claims allowance as a matter of *res judicata*). The failure of the Town to object to the improper treatment of its allowed secured claim in the Debtor's plan prior to confirmation or to appeal the confirmation order is binding on the Town. While the treatment of the Town's claim was wrong, the interest in the finality of confirmation orders in bankruptcy proceedings is stronger than

-14-

> the bankruptcy court's obligation to verify a plan's compliance with the Bankruptcy Code. Andersen v. UNIPAC-NEBHELP (In re Andersen), 179 F. 3d. 1253, 1258. The failure of the Town to object to its treatment under the plan or to appeal the final confirmation order results in the loss of its right to collect postpetition interest. Doral Mortgage Corp. v. Echevarria, (In re Echevarria), 212 B.R. 185, 188 (B.A.P. 1st Cir. 1997). In re Burrell, 346 B.R. at 570.

Notwithstanding the binding effect of plan confirmation under section 1327(a), the application of the principle becomes somewhat blurry when there is a disconnect between a confirmed plan's provisions and a timely filed discrepant proof of claim. If the proof of claim is filed by a secured creditor, as is the case before this court, then the disconnect between the claims allowance process and the binding effect of plan confirmation under section 1327(a) becomes heightened because pursuant to section 1322(b)(2), a Chapter 13 debtor may modify the rights of a secured creditor through the Chapter 13 plan, except a claim secured only by a security interest in the debtor's home. See 11 U.S.C. §1322(b)(2)[2]. Chapter 13 debtors may, pursuant to section 1322(b)(5), cure a default on a secured claim within a reasonable time while the case is pending, including defaults on home mortgages. See 11 U.S.C. §1322(b)(5)[3]. "The power to cure an arrearage home mortgage is important to many Chapter 13 debtors because it is often the inability to get current on a home mortgage that forces the debtor into bankruptcy in the first place. Of course, to cure a default, the debtor must be able to ascertain the amount of the arrearage. This often proves difficult because, in many cases, the mortgage holder has not yet filed a proof of claim at the time of confirmation and fails to adequately communicate with the debtor." In re Gordon, 2011 Bankr. Lexis 3848, *8-9 (Bankr. D. Colo. 2011).

---

[2] Section 1322(b)(2) provides: "(b) [s]ubject to subsections (a) and (c) of this section, the plan may—
    (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims." 11 U.S.C. §1322(b)(2).

[3] Section 1322(b)(5) provides that: "notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. §1322(b)(5).

A secured creditor is not required to file a proof of claim or participate in the bankruptcy process to protect its lien. See Dewsnup v. Timm, 502 U.S. 410, 417, 112 S. Ct. 773, 116 L. Ed. 2d 903 (1992). In addition, Section 506(d)(2) provides that: "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless… (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title." 11 U.S.C. §506(d)(2). Thus, a secured creditor does not need to file a proof of claim to protect its lien, since the same passes through the bankruptcy process unaffected. The secured mortgage holder files a proof of claim when it wants to participate in the distribution of the plan payments. A debtor must file a proof of claim on behalf of a secured creditor if the debtor wants that there be disbursements to a secured creditor that has not filed a proof of claim under the provisions of a Chapter 13 plan.

In this case the Debtors filed a proof of claim on behalf of BSPR to provide for the payment of post-petition arrears under the post confirmation modified plan. BSPR filed its claim nine (9) months thereafter, and, meanwhile received payments under the confirmed plan.

*Claims Allowance vs. Plan Confirmation*

The main issue in the instant case, is whether the Trustee pays allowed claims or whether the Trustee pays according to the provisions of the confirmed plan (or, as in this case, a post-confirmation modified plan). The issue is complex. In order to ascertain the manner in which the Trustee has to pay, the legal controversy that must be ultimately resolved is whether the provisions contained in a confirmed plan (or a post-confirmation modified plan) trump the contrary provisions of an allowed amended proof of claim. The instant case is complicated because it brings forth three (3) important concepts, which unfortunately have not been harmonized for the same to function as a seamless procedure in Chapter 13 cases. These concepts are the following: (i) claims allowance; (ii) plan confirmation; and (iii) protection of lien rights. See In re Gordon, 2011 Bankr. Lexis 3848, *6 (Bankr. D. Colo. 2011); In re Euliano, 442 B.R. 177, 183-184 (Bankr. D. Mass). Judge Brown in In re Gordon has set forth in a concise and eloquent manner the difficulties that result from the interaction of these three concepts:

-16-

"[i]t is not difficult to imagine that the interaction of the three concepts—claims allowance, plan confirmation, and protection of rights—often creates problems. For example, if a Chapter 13 plan purports to do something that is at odds with a filed proof of claim or a secured creditor's lien rights, which concept wins out? Must a creditor file both a proof of claim and a plan objection to protect its rights? Does a confirmed plan always control since it has *res judicata* effect? Or does an allowed claim take precedence, even if it was filed after plan confirmation? Do the lien rights of a secured creditor always ride through bankruptcy unaffected, even in the face of a contrary plan provision? Does the Code give the debtor the power to alter secured creditor's rights and to vest property free and clear of claims and interests through the plan process? If a debtor is prevented from altering a home mortgage holder's lien rights, how does the debtor ensure that he or she has cured the arrearage? Unfortunately, there are no simple answers to these questions." In re Gordon, 2011 Bankr. Lexis 3848, at *12-13.

The problem is that the claims allowance process in Chapter 13 cases overlaps with the requirements of plan confirmation pursuant to section 1324(b)[4] and Fed. R. Bankr. P. 3002(c)[5]. "But, at this writing, the interaction between the effects of confirmation under §1327 and the filing and allowance of claims under §§501 and 502 is too uncertain for debtors or creditors to intentionally risk their rights. Creditors should always object to an unacceptable plan and file timely proofs of claim. Debtors who wish to challenge the allowance, amount or characterization of a claim should object to any proof of claim that is inconsistent with the provisions of the plan. Debtors maximize the probability that a specific plan provision will have binding effect on a creditor by being very careful about the adequacy of notice that a creditor's rights will be at issue at confirmation." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §274.1, at ¶[11], Sec. Rev. Nov 5, 2009, www.Ch13online.com;  See also; In re Anderson, 439

---

[4] Section 1324(b) provides: "[t]he hearing on confirmation of the plan may be held not earlier than 20 days and not later than 45 days after the date of the meeting of creditors under section 341(a), unless the court determines that it would be in the best interests of the creditors and the estate to hold such hearing at an earlier date and there is no objection to such earlier date."

[5] Fed. R. Bankr. P. 3002(c) provides: [i]n a chapter 7 liquidation, chapter 12 family farmer's debt adjustment, or chapter 13 individual's debt adjustment case, a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under §341(a) of the Code." Fed. R. Bankr. P. 3002(c). Governmental units have 180 days after the date of the order of relief to file proof of claims pursuant to Fed. R. Bankr. P. 3002(c)(1).

-17-

B.R. 206, 210 (Bankr. M.D. Ala. 2010) ("The *res judicata* effect of Section 1327, however, is effective to bind the creditor only if the creditor is afforded due process having been given notice of the plan and an opportunity to object.").  Lundin and Brown opine that due process issues (adequate notice) have contributed to a certain extent to weakening (eroding) the binding effect of a confirmed plan under Section 1327(a). Lundin and Brown state as follows:

> "The Bankruptcy Code and Rules do not resolve the collision between the confirmation process that culminates in a binding order under §1327(a) and the claims allowance process that deems a claim allowed as filed until objection and that includes separate procedures for valuing collateral. The reported decisions have struggled for an accommodation. Notice and due process considerations have obscured clear resolution of the limits, if any, imposed on the effects of confirmation by the claims allowance process.
>
> Many courts, including the U.S. Courts of Appeals for the Fourth, Fifth and Eleventh Circuits, have limited the binding, vesting and free and clear effects of confirmation, when the plan is inconsistent with a timely filed proof of claim and notice of how the plan or confirmation process would affect creditors fell short of the notice required by the Rules or due process with respect to objections to claims." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §233.1, at ¶[8-9], Sec. Rev. June 15, 2004, www.Ch13online.com.

Three (3) different approaches have been developed through jurisprudence regarding this legal conundrum, the overlap that exists between the claims allowance process and the binding effect of plan confirmation as to secured claims. The three (3) different approaches have been labeled as: (i) "the claims process over the plan confirmation process;" (ii) "the chapter 13 plan process over the claims process;" and (iii) "the middle-of-the-road approach." See In re Basham, 167 B.R. 903, 905 (Bankr. W.D. Mo. 1994); In re Harnish, 224 B.R. 91, 93 (Bankr. N.D. Iowa 1998). In In re Gordon, the three different approaches were labeled as: (i) "emphasis on the claims allowance process and secured creditors rights" (ii) "emphasis on the *res judicata* effect of a confirmed plan;" and (iii) "emphasis on due process." In re Gordon, 2011 Bankr. Lexis 3848, at *18-22.

The first approach labeled as the "claims process over the plan confirmation process" or "emphasis on the claims allowance process and secured creditors rights" proposes that the

chapter 13 plan confirmation does not alter a secured creditor's lien rights. <u>See</u> <u>Universal Am. Mortg. Co. v. Bateman</u> (<u>In re Bateman</u>), 331 F. 3d 821, 827-33 (11th Cir. 2003); <u>Cen-Pen Corp. v. Hanson</u>, 58 F. 3d 89, 92-93 (4th Cir. 1995); <u>Simmons v. Savell</u> (<u>In re Simmons</u>), 765 F. 2d 547, 555-56 (5th Cir. 1985). However, it must be noted that the secured creditors in the cases of <u>In re Bateman</u> and <u>In re Simmons</u> had filed proof of claims prior to the plan confirmation and the claims filed were inconsistent with the treatment the plan gave to the claims. Also, no objections to the claims had been filed by the chapter 13 trustee or by the debtors.

In re Simmons involved a statutory lien that was listed by the debtor as unsecured in the schedules and in the plan. The creditor filed a proof of claim prior to plan confirmation listing his claim as secured. Neither the trustee nor the debtor filed an objection to the claim. The secured creditor did not object to the plan and received payments under the plan. The Fifth Circuit held that the plan was erroneously confirmed because the requisites of section 1325(a)(5) were not satisfied because the plan incorrectly classified the creditor's claim as unsecured. The Fifth Circuit established that, "[t]he Code and the Rules do not envision the use of a plan as a means for objecting to proofs of claims." <u>In re Simmons</u>, 765 F. 2d at 553.

In <u>In re Bateman</u>, a secured creditor filed a proof of claim before plan confirmation. The claim was for mortgage arrearages that were secured with the debtor's principal residence. The secured creditor did not file an objection to the confirmation of the plan. A year after plan confirmation, the debtor filed an objection to the secured creditor's proof of claim. The Eleventh Circuit held that since the debtor failed to file a timely objection to the secured creditor's proof of claim, the same was deemed allowed under section 502. Moreover, the debtor in the plan listed mortgage arrearages as "disputed" on the proposed plan, and the plan was confirmed. The Eleventh Circuit held that:

> "[g]iven the 'deemed allowed' language of §502, the explicit procedures set forth in Rule 3007 to effect a proper disallowance, the existence of a secured home mortgage claim, and the failure by the debtor here, not the creditor, to follow the proper procedures, we refuse to permit an inconsistent plan provision to constitute a constructive objection by reason of the Plan's notation of dispute alone, especially where a bankruptcy court does not consider an objection until over a year after the Plan's

-19-

confirmation. See In re Starling, 251 B.R. at 910 ('To allow the Debtor to object, months after the plan has been confirmed, would contradict the 'finality' objective of the confirmation process and would overlook the express language of section 1327(a) of the Bankruptcy Code.') That the plan states an amount in conflict with the proof of claim demands a resolution of the inconsistency, but a debtor's post-confirmation objection is not the appropriate vehicle by which to do so." In re Bateman, 331 F. 3d at 828.

The Eleventh Circuit in In re Bateman also held that the corresponding mortgage arrearage claims also survive the §1327 *res judicata* effect of a confirmed plan. See In re Bateman, 331 F. 3d at 831.  The issue these cases focus on is that notice of plan confirmation is not the appropriate procedure to alter a secured creditor's rights. Rather, the procedures that should be employed are claim objections, as part of the claims allowance process by the debtor, or an adversary proceeding.

The second approach labeled as the "the chapter 13 plan process over the claims process" or "emphasis on the *res judicata* effect of a confirmed plan" proposes that the chapter 13 plan confirmation under §1327 is sufficient to modify a secured creditor's lien through a plan. Contrary to the first approach, if the secured creditor has been duly noticed of the proposed chapter 13 plan, notwithstanding that it has filed a discrepant proof of claim, then the secured creditor's failure to object to the plan can result in a modification of its claim and lien. See In re Gordon, 2011 Bankr. Lexis 3848, at *22; In re Pence, 905 F. 2d 1107 (7th Cir. 1990); In re Ramey, 301 B.R. 534, 545(Bankr. E.D. Ark. 2003) ("The principles of *res judicata* should be applied except in cases where the notice to the creditor of the plan treatment of the lien is so insufficient that it violates due process of law"); In re Searcy, 333 B.R. 617, 623 (Bankr. D. Mass. 2005) ("…provisions in an *adequately noticed* Chapter 13 plan which modify the rights of a secured creditor are the functional equivalent of a claims objection under §502(a). It does not matter, substantively, which route the debtor takes so long as the creditor is informed of the itinerary and has an adequate opportunity to respond to either by defending its proof of claim or by pressing an objection to the plan.").

-20-

The First Circuit Bankruptcy Appellate Panel in <u>Factors Funding Co. v. Fili</u> (<u>In re Fili</u>), held that: "…in the face of notice that timely and unambiguously informs a creditor that his claim will be disallowed in total and discharged under a Chapter 13 plan pending for confirmation, the creditor may not ignore the confirmation process and fail to object simply because the bar date for filing a proof of claim has yet to expire. A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own peril. Confirmation of such a plan, after notice and opportunity for hearing, bars the creditor's later filed claim under principles of *res judicata*." <u>In re Fili</u>, 257 B.R. 370, 374 (B.A.P. 1st Cir, 2001). The First Circuit Bankruptcy Appellate Panel in a footnote recognized the existing conflict between the claims allowance process and the plan confirmation process, particularly when plan confirmation occurs before the claims' bar date. The <u>Fili</u> panel noted the following:

> "We recognize that there is perceptible tension between the plan confirmation process and the claims allowance/disallowance process. That tension is particularly apparent where, as here, confirmation may precede the claims bar date's expiration. <u>See</u> generally 2 Keith M. Lundin, <u>Chapter 13 Bankruptcy</u> §610 (2d ed. Supp. 1996). That tension is relaxed entirely with an appreciation that: Claim holders are entitled to have their rights in a Chapter 13 case determined after appropriate notice and opportunity for a hearing. Notice and procedural due process can be satisfied in several ways without violating any fundamental principles of bankruptcy law. <u>Id</u>. §610 at 6-23 (commenting that, with adequate notice and opportunity for hearing, disputes that could be resolved through other procedural vehicles, e.g. collateral valuation for secured claims, may appropriately be determined at confirmation." <u>In re Fili</u>, 257 B.R. at 374.

The third approach, referred to as the "middle-of-the-road approach" or "emphasis on due process" proposes that a lien may be modified via the plan confirmation process, if the creditor received adequate notice that its lien would be adversely affected by the plan. <u>See</u> <u>Piedmont Trust Bank v. Linkous</u> (<u>In re Linkous</u>), 990 F. 2d 160, 162-163 (4th Cir. 1993).  In <u>In re Linkous</u> the debtor's plan proposed to bifurcate a creditor's secured claim under section 506(a). However, the plan summary that was sent to the secured creditor failed to specify that the secured claim would be treated as partially secured. The proposed plan was confirmed and thereafter the secured creditor challenged the plan on due process grounds.  The legal issue was whether the

secured creditor (the collateral was an automobile) received adequate notice of the debtors' intent to bifurcate a secured claim pursuant to a section 506 valuation. The Fourth Circuit concluded that: "… a bankruptcy court confirmation order generally is treated as *res judicata*. However, we cannot defer to such an order on *res judicata* grounds if it would result in a denial of due process in violation of the Fifth Amendment of the United States Constitution." <u>In re Linkous</u>, 900 F. 2d at 162.  The Fourth Circuit in <u>In re Linkous</u> also held that to satisfy due process requirements, "the notice [of the proceedings] must be of such nature as reasonably to convey the required information." <u>Id</u>. at 162-163. Thus, to reasonably convey the required information the notice had to include the section 506 hearing to reevaluate the secured claim. Moreover, the 4th Circuit in <u>In re Linkous</u> concluded that: "[a] debtor should inform the secured creditor of an intent to reclassify its claim into partially secured and partially unsecured status." <u>Id</u> at 163.

### *Effect of the Espinosa Decision*

The extent and impact of the decision in <u>United Student Aid Funds, Inc. v. Espinosa</u>, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010) on the legal issue of the claims allowance process versus the binding effect of the confirmed plan, and in particular concerning a secured creditor (home mortgage) depends on whether lower courts interpret the holding broadly or narrowly. In <u>Espinosa</u>, the debtor proposed a plan which provided that he would only repay the principal of the student loans. The proposed plan was served on the student loan creditor, who filed a proof of claim including both the principal and the interest. Absent objections, the plan was confirmed. After the debtor received the discharge, the student loan creditor challenged the confirmed plan by requesting that the discharge Order be deemed void pursuant to Fed. R. Civ. P. 60(b)(4) because the creditor did not receive due process. The student loan creditor argued that the debtor had to file an adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) for the bankruptcy court to first determine whether the student loan interest debt would impose an undue hardship on the debtor under section 523(a)(8) before confirming the discharge of a student loan debt. The

Supreme Court found that the student loan creditor's due process rights had not been violated.

The Supreme Court held as follows:

> "Espinosa's failure to serve [the creditor] with a summons and complaint deprived [the creditor] of a right granted by a procedural rule. See Fed. R. Bankr. P. 7004(b)(3). [The creditor] could have timely objected to this deprivation and appealed from an adverse ruling on its objection. But this deprivation did not amount to a violation of [the creditor's] constitutional right to due process. Due process requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950); see also Jones v. Flowers, 547 U.S. 220, 225, 126 S. Ct. 1708, 164 L. Ed. 2d 415 (2006) ('Due process does require actual notice…'). Here, [the creditor] received actual notice of the filing and contents of Espinosa's plan. This more than satisfied [the creditor's] due process rights. Accordingly, on these facts, Espinosa's failure to serve a summons and complaint does not entitle [the creditor] to relief under Rule 60(b)(4)." Id. at 1378.

In Espinosa, the Supreme Court also held that: "Given the Code's clear and self-executing requirement of an undue hardship determination, the Bankruptcy Court's failure to find undue hardship before confirming Espinosa's plan was a legal error…But the order remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." Id. at 1380.

Commentators Lundin and Brown opine that Espinosa should not be read narrowly, that is, as being just a student loan discharge case, rather, the Espinosa decision is:

> "… a robust confirmation that the effect of confirmation under §1327(a) really means what the Code says: 'The provisions of a confirmed plan bind the debtor and each creditor…whether or not such creditor has objected to, has accepted, or has rejected the plan.' Although many circuit court decisions have gone astray in recent years, chipping away at the finality of confirmation orders in various contexts in chapter 13 cases—sometimes confusing statutory and procedural rights with constitutional due process—in Espinosa, the Supreme Court brings us back to reality." Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶[83], Sec. Rev. Oct. 8, 2010, www.Ch13online.com.

Lundin and Brown further state that:

> "The message in Espinosa for debtors' lawyers is about notice. A chapter 13 plan that is properly noticed to all creditors is a remarkably powerful tool for the management of debt and other rights of creditors. The outcome in Espinosa was driven by the indisputable clarity and adequacy of notice to the student loan creditor. The take-away from Espinosa for creditors is just the other side of that notice: Snooze, you lose. Plan confirmation is the cleavage point in the Chapter 13 case. Set up your internal protocols to catch and respond to unacceptable plans at confirmation. If the debtor gives good notice, you will be bound by confirmation of even an 'illegal' plan provision. We always thought that was the law, and Espinosa makes it so." Id. at §229.1, at ¶[76] -[77].

The First Circuit Bankruptcy Appellate Panel in United States v. Monahan (In re Monahan), 497 B.R. 642, 651 (B.A.P. 1st Cir. 2013) concluded the following regarding the Espinosa decision:

> "[c]ourts have held that Espinosa stands for the 'limited proposition that a confirmed plan is binding on all parties in interest, *provided the plan proponent afforded such parties adequate notice*, consistent with the Due Process Clause of the United States Constitution-even if the plan violates the Bankruptcy Code in some particulars.' In re Deavila, 431 B.R. 178, 179 (Bankr. W.D. Mich. 2010) (emphasis added); see also In re Brodeur, 434 B.R. 348, 351 n.2 (Bankr. D. Vt. 2010) (noting that Espinosa 'defines the binding effect of confirmation orders on interested parties *who receive sufficient notice*') (emphasis added). After Espinosa, a 'creditor or other party in interest who chooses to sleep on its rights by not objecting to a plan does so at its own peril and as long as due process requirements are met, will be bound by it.' In re McLemore, 426 B.R. 728, 744 (Bankr. S.D. Ohio 2010) (citation omitted) (emphasis added)." In re Monahan, 497 B.R. at 651.

*Court's View regarding Claims Allowance vs. Plan Confirmation*

This court adopts the second approach, which emphasizes the binding effect of a confirmed plan provided that the due process requirements of reasonable and actual notice were satisfied. This view is aligned with the Espinosa decision, which supports the principle of finality of plan confirmation orders. See also; In re McGrahan, 459 B.R. at 874-875; In re Murphy, 487 B.R. 86, 94 (Bankr. D.R.I. 2013); In re Muñoz Marquez, 2011 Bankr. Lexis 3806 (Bankr. D.P.R. 2011).  In Reid v. Wells Fargo Bank, N.A., 480 B.R. 436, 444-445 (Bankr. D. Mass. 2012), the

court concluded that a confirmed plan binds not only the debtors and creditors but also the Trustee pursuant to case law. See also; Boyajian v. Vargas (In re Vargas), 2012 Bankr. Lexis 2910 (B.A.P. 1st Cir. 2012) ("Although not a listed party, a chapter 13 Trustee is bound by a confirmed plan as well. See, e.g. Hope v. Acorn Fin., Inc., No. 5:110CV-276, 2012 U.S. Dist. Lexis 2698, 2012 WL 74874 (M.D. Ga. Jan. 10, 2012) (reviewing numerous cases that support the conclusion). Confirmation of a chapter 13 plan affords it *res judicata* effect and therefore prevents relitigation of matters that either were raised or could have been raised prior to confirmation. See e.g., Burnett v. Burnett (In re Burnett), 646 F. 3d 575, 581 & n.4 (8th Cir. 2011) (noting Supreme Court, while not citing §1327(a) directly, affirmed the binding effect in United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1381, 176 L. Ed. 2d 158")).

After carefully analyzing the pertinent jurisprudence, the commentators and the relevant sections of the Bankruptcy Code, this court concludes that the stage of the bankruptcy process in which the inconsistency between the claims allowance process and the binding effect of the plan arises is critical and essential in determining which should prevail. Also, the sufficiency of the notice of the treatment provided to a secured creditor before plan confirmation must afford reasonable time for the creditor to object to the plan. Thus, timing and due notice are key to the binding effect of a confirmed plan and the finality of plan confirmation orders. On the other hand, if a discrepant secured proof of claim is filed before the plan confirmation, then the debtor or Trustee should object the same as part of the claims allowance/disallowance process and before the entry of the confirmation order. The conflict between the claims allowance process and the plan confirmation process oftentimes occurs when the plan gets confirmed prior to the claims bar date and the creditor files after plan confirmation a timely proof of claim. It behooves the debtor or the chapter 13 trustee to object the secured proof of claim prior to confirmation to avoid the friction between the claims allowance process and the plan confirmation process.

In the instant case, the plan was confirmed on February 11, 2008 (Docket No. 15) and the plan clearly indicated that it would make regular payments directly to BSPR. BSPR was given

due notice of the plan and the hearing on confirmation. BSPR did not file an objection to the proposed plan confirmation.

On March 17, 2008, that is, after confirmation, BSPR filed a procedurally defective proof of claim (#4-1) including only the supporting documentation of its claim. BSPR did not file the proof of claim in the appropriate Official Form, that is Official Form 10. The First Circuit Appellate Panel in <u>Am. Express Bank, FSB v. Askenaizer</u> (<u>In re Plourde</u>), 418 B.R. 495, 504, fn. 12 (B.A.P. 1st Cir. 2009) stated as follows regarding proofs of claims which are not in conformity with Fed. R. Bankr. P. 3001:

> "Section 502 lists nine bases for disallowing claims. Failure to file a proof of claim meeting the requirements of Bankruptcy Rule 3001 and Official Form 10 is not among them. <u>See</u> 11 U.S.C. §502(b), supra n.11. Neither Bankruptcy Rule 3001 nor §502 provides that a proof of claim which does not conform with the requirements of the rule and/or the form be disallowed due to such noncompliance, nor do they otherwise address the consequence of filing a proof of claim that fails to meet all of the rule's requirements. Rather, when the proof of claim is not filed in accordance with the Federal Rules of Bankruptcy Procedure, it does not constitute *prima facie* evidence of the validity and the amount of the claim, and the burden of proof rests on the claimant. <u>In re Long</u>, 353 B.R. at 13. Bankruptcy Rule 3001 and Official Form 10's documentary requirements and the shifting burden serve two purposes. <u>See</u> <u>In re Burkett</u>, 329 B.R. 820, 827 (Bankr. S.D. Ohio 2005). First, the supporting documentation required by the rule and form are intended to enable the debtor or trustee to evaluate the claim's amount and validity and to challenge portions of the claim that may be inaccurate. <u>Id</u>. Second, the rules governing claims are intended to simplify the claims allowance process and provide a fair and inexpensive process for all parties including creditors. <u>Id.</u>"

The supporting documentation filed by BSPR, in particular the Statement of Account dated February 5, 2008, did not include pre-petition mortgage arrearages or any other type of pre-petition fees associated with the mortgage loan. These were relied on by the Debtors when filing the Chapter 13 plan that was confirmed and the post confirmation modified plan which became the confirmed plan. On September 30, 2011, that is, more than three (3) years after the plan was confirmed, BSPR filed a motion for relief from the automatic (Docket No. 32) stating that the Debtors had accumulated post-petition arrears as indicated on Exhibit A. Exhibit A

details that the Debtors had failed to make four (4) post-petition payments and also indicated that zero (0) pre-petition payments were due at the time. Such evidence confirmed that there were no pre-petition arrears.

Subsequent to BSPR's request for relief from the automatic stay, on October 5, 2011, the Debtors filed a motion for post confirmation modification of a Chapter 13 plan dated October 3, 2011, specifically indicating that, "[t]he grounds for the modification of the plan is to include post-petition mortgage arrears with Banco Santander which occurred because they had extraordinary monthly utilities expenses in the past months." (Docket No. 37). The plan was modified to include post-petition mortgage arrearages in the amount of $3,396.28. On that same date, the Debtors filed proof of claim #5-1 on behalf of secured creditor BSPR and included that the basis of the claim is for post-petition mortgage arrears in the amount of $3,396.28, that the amount of the secured claim is $86,419.07, and that the value of the property is $110,000. On October 25, 2011, the court granted the motion for post confirmation modification (Docket No. 43). BSPR did not object to the proposed post-confirmation plan modification and did not appeal the confirmation of the amended plan. Therefore, the Order is final.

On July 17, 2012, that is, almost 4 years and 8 months after the bankruptcy petition was filed, BSPR filed an amended proof of claim, claim #4-2, in which it included that the amount of pre-petition and post-petition arrears was $5,093.56 up to September 2011 and that the amount of the secured claim (mortgage claim) was $85,676.86. The amended claim #4-2 for the first time and in direct contradiction of prior statements discloses pre-petition arrears.

The information that BSPR has provided throughout this case in relation to the amounts owed by the Debtors has been inconsistent. The supporting documents filed by BSPR on March 17, 2008 lodged as proof of claim number 4-1, the Exhibit A attached to the motion for relief from stay filed by BSPR on September 30, 2011, and the amended proof of claim number 4-2 filed on July 17, 2012 show different amounts. Moreover, BSPR has not objected to the amounts indicated in both chapter 13 plans, the November 16, 2007 plan confirmed on February 11, 2008; and the plan attached to the motion for post confirmation modification filed on October 5, 2011.

Likewise, BSPR did not object to the amended claim number 5-1 filed to allow proper administration of the post confirmation modified plan, which request was granted on October 25, 2011.

The court finds that the plan that was confirmed at the onset of this case was not contrary to the supporting documentation that was filed by the secured creditor after the plan confirmation. On the other hand, this court finds that the amended claim #4-2 filed by BSPR four years and eight months after the petition date constitutes a collateral attack on the Debtors' confirmed Chapter 13 plan, as modified. The secured creditor was duly notified of the post-petition mortgage arrearages that were going to be paid throughout the plan and prior to the post-confirmation modification. The secured creditor in its motion requesting relief from the automatic stay informed the debtor that it owed no pre-petition mortgage arrearages and provided the amount owed for post-petition mortgage arrearages. In addition, BSPR failed to object to the proposed post-confirmation plan modification.

This court concludes that the post-confirmation modified plan dated October 3, 2011, based on BSPR's own statement of accounts for the mortgage loan, and after notice and opportunity for hearing, bars BSPR's later filed amended claim under the binding effect disposition in 11 U.S.C. §1327(a). Moreover, the court finds that BSPR provided contradictory information to the Debtors regarding the alleged pre-petition mortgage arrearages and charges, despite having ample time to do so. Before July 17, 2012, the information that BSPR provided to the Debtors was that they did not owe pre-petition mortgage arrearages. The belated reclamation of pre-petition amounts owed, even if true, considering the factual sequence in this case should not be allowed. Timeliness should be determined from all the circumstances. Candelario-Del Moral v. UBS Fin. Servs. (In re Efron), 746 F. 3d 30, 35 (1st Cir. 2014). BSPR's filing of amended proof of claim number 4-2 was untimely under the circumstances.

Thus, the court holds that the pre-petition mortgage arrearages, fees and charges were paid in full. Therefore, there are no pre-petition arrears owed.

*Fed. R. Bankr. P. 3002.1*

Fed. R. Bankr. P. 3001(c)(2), as part of the 2011 amendments to Fed. R. Bankr. P. 3001, requires that a creditor that is secured by a mortgage on the debtor's principal residence must file Attachment A in addition to Official Form 10. See Fed. R. Bankr. P. 3001(c)(2).[6] The 2011 amendments to the Federal Rules of Bankruptcy Procedure became effective on December 1, 2011. Fed. R. Bankr. P. 3002.1 was adopted in December 2011 to "address the problem faced by many Chapter 13 debtors who would 'emerge from bankruptcy only to face a substantial and previously undisclosed arrearage' resulting from late fees or other charges arising from their residential mortgage." In re Baca, 2012 Bankr. Lexis 5874, *13-14 (Bankr. D.N.M. 2012). Rule 3002.1 deals with this particular issue by requiring notice or payment changes and thus providing an opportunity for the debtor to contest the same during the Chapter 13 case. Fed. R. Bankr. P. 3002.1 applies only in Chapter 13 cases and to claims secured by a debtor's principal residence that are provided for under the debtor's plan in conformity with 11 U.S.C. §1322(b)(5). See Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶3002.1.01 (16th ed. 2013). These are claims that: (i) are secured by the debtor's principal residence; (ii) may or may not have a pre or post-petition arrearage component that will be paid during the case either directly through the plan or directly by the creditor; and (iii) other than the arrearage component of the claim, the

---

[6] Fed. R. Bankr. P. 3001(c)(2) provides in pertinent part: "Additional Requirements in an Individual Debtor Case; Sanctions for Failure to Comply. In a case in which the debtor is an individual:

(A) If, in addition to its principal amount, a claim includes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim.

(B) If a security interest is claimed in the debtor's property, a statement of the amount necessary to cure any default as of the date of the petition shall be filed with the proof of claim.

(C) If a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim. If an escrow account has been established in connection with the claim, an escrow account statement prepared as of the date the petition was filed and in a form consistent with applicable nonbankruptcy law shall be filed with the attachment to the proof of claim.

(D) If the holder of a claim fails to provide any information required by the subdivision (c), the court may, after notice and hearing, take either or both of the following actions:

(i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or

(ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3001(c)(2).

-29-

mortgage claim will not be paid in full during the life of the plan. Id.  "The Rule is designed to prevent unexpected deficiencies in a mortgage when a case is completed and closed. If a creditor's claim meets the requirements for application of Rule 3002.1, compliance with its provisions is mandatory, and a court does not have discretion to excuse compliance." Id. Section 1322(b)(2) includes specific provisions that apply to mortgage claims on the debtor's primary residence. Section 1322(b)(2) allows the modification of the rights of all secured creditors other than those with liens on the debtor's principal residence.

Section 1322(b)(5) allows a debtor to cure pre-petition and/or  post-petition defaults on a secured claim and maintain payments during the life of the Chapter 13 case. See 11 U.S.C. §1322(b)(5).[7] The Debtors' post-confirmation modification to the Chapter 13 plan provided for the curing of post-petition mortgage defaults (arrearages) over the remaining term of the plan and provided that the Debtors would continue making post-petition mortgage payments directly to BSPR.

Fed. R. Bankr. P. 3002.1(f) and (g) provide in pertinent part:

> "(f) Notice of Final Cure Payment. Within 30 days after the debtor completes all payments under the plan, the trustee shall file and serve on the holder of the claim, the debtor and debtor's counsel a notice stating that the debtor has paid in full the amount required to cure any default on the claim. The notice shall also inform the holder of its obligation to file and serve a response under subdivision (g). If the debtor contends that final cure payment has been made and all plan payments have been completed, and the trustee does not timely file and serve the notice required by this subdivision, the debtor may file and serve the notice.
>
> (g)  Response to Notice of Final Cure Payment. Within 21 days after service of the notice under subdivision (f) of this rule, the holder shall file

---

[7] Section 1322(b)(2) and (5) provides in pertinent part: "[s]ubject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims; ----

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." 11 U.S.C. §1322(b)(2) and (5).

and serve on the debtor, debtor's counsel, and the trustee a statement indicating (1) whether it agrees that the debtor has paid in full the amount required to cure the default on the claim, and (2) whether the debtor is otherwise current on all payments consistent with §1322(b)(5) of the Code. The statement shall itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f)." Fed. R. Bankr. P. 3002.1(f) and (g).

Pursuant to Fed. R. Bankr. P. 3002.1(g) the creditor upon whom the Final Cure Notice is served must file a statement and in turn serve it upon the Chapter 13 Trustee, the debtor and debtor's counsel within 21 days after service of the notice. This statement includes the following: (i) whether the creditor agrees that the debtor has paid all arrearages in full to cure any default in the mortgage; and (ii) whether the debtor is current on all payments required by §1322(b)(5). Fed. R. Bankr. P. 3002.1(g). If the debtor is not current, then the creditor must itemize all amounts necessary to cure any arrearages that the creditor contends remain unpaid. See Alan N. Resnick & Henry J. Sommer, 9 Collier on Bankruptcy ¶3002.1.04[2] (16th ed. 2013). "The creditor must file the statement as a supplement to the creditor's proof of claim. The supplement is not accorded the evidentiary weight of *prima facie* proof that the original proof of claim is afforded pursuant to Rule 3001(f)." Id. If the creditor fails to provide this information, Fed. R. Bankr. P. 3002.1(i) provides that: "[i]f the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions: (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed. R. Bankr. P. 3002.1(i).

BSPR filed its original claim on March 17, 2008. BSPR failed to file the Official Form 10 for its proof of claim. It only included the supporting documents for its claim. Amongst the supporting documents, BSPR included a Statement of Account as of February 5, 2008 which

disclosed that there were no pre-petition arrears. At the time this case was filed, Fed. R. Bankr. P. 3002.1 had not been implemented, thus the secured creditor was not required to file with its proof of claim, the Mortgage Proof of Claim Attachment (Attachment A). The Debtors' plan was confirmed on February 11, 2008 (Docket No. 15). The Debtors' plan did not include any amounts as secured arrears to be paid during the life of the plan. As part of their plan, the Debtors specified that they would maintain regular payments directly to BSPR (Docket No. 2).

Subsequently, on September 30, 2011 BSPR filed a motion for relief from the stay arguing that the relief from the automatic stay should be granted pursuant to 11 U.S.C. §362(d)(1) and (d)(2) because the debtors have failed to make post-petition payments (Docket No. 32). Exhibit A of the Motion for Relief from the Stay is a Request for Legal Action form that provides information that the total payments due are 4, that all of these payments are post-petition payments, and that no pre-petition payments are owed. This Legal Action form included a verified statement signed by Ingrid Cruz, Manager Legal Division & Bankruptcy Dept., which declares under penalty of perjury that the amount claimed by Movant in the motion represents accurately the information kept in the accounting books and record kept by Movant in the ordinary course of business and that these facts are alleged as true and correct to the best of her knowledge.

On October 5, 2011, the Debtors filed a motion for post confirmation modification of Chapter 13 plan in which they state that the reason for the modification of the plan is to include the post-petition mortgage arrears with BSPR (Docket No. 37). On October 5, 2011, the Debtors filed proof of claim #5-1 on behalf of BSPR disclosing that the basis of the claim is for post-petition mortgage arrears in the amount of $3,396.28. Proof of claim #5-1 disclosed that the value of the property was $110,000 and the secured claim was in the amount of $86,419.07. On October 25, 2011, Debtors' amended plan was confirmed (Docket No. 43).

On July 17, 2012, BSPR filed amended proof of claim 4-2 which listed the amount of $5,093.56 in arrears. Thus, BSPR on Attachment A indicated that the total amount necessary to cure the default as of the petition date is $5,093.56. However, the arrears were paid in

accordance with the post confirmation modified plan, that is $3,396.28, based on BSPR's own documents provided for the reasons set forth below.

*The Binding Effect of the Confirmed Chapter 13 Plan Prevails*

The record shows and the court finds that BSPR committed several procedural errors and had ample time to correct the same during the life of the plan. The first error was that it failed to file the official proof of claim form on March 17, 2008. BSPR filed the supporting documents of their claim. BSPR filed a motion for relief from stay due to the fact that the Debtors had failed to make four (4) post-petition payments. The motion for relief of stay included Exhibit A which is a Legal Action form which indicated that the Debtors had a total of 4 payments due all of which were post-petition payments and it listed no pre-petition payments owed. As a result of BSPR's motion for relief from the automatic stay, the Debtors filed a request for post confirmation modification of their Chapter 13 plan to cure the post-petition arrears throughout the remaining life of the plan. BSPR did not object to the confirmation of Debtors' post confirmation amendment of their Chapter 13 plan. It was not until July 17, 2012 that BSPR filed a proof of claim #4-2 which listed the amount of $5,093.56 in the line item which is only pre-petition arrearages since these arrearages are as of the time the case was filed. BSPR writes next to this amount that the same is for "pre and post up to September 2011." BSPR filed proof of claim #4-2 in conformity with the 2011 amendments to Rule 3002.1 and as a result, included the Mortgage Proof of Claim Attachment which for the first time listed that the Debtors owed the following pre-petition arrearages: (i) late charges in the amount of $195.55 incurred on 11/28/2007; and (ii) attorney's fees in the amount of $850.00 also incurred on 11/28/2007. However, the filing was too late to affect the binding effect of §1327.

The instant case is different from In re Alvarado Jurado, 318 B.R. 251 (Bankr. D.P.R. 2004) in which the controversy before the court was whether a proof of claim must be filed to (a) confirm a plan which provides for that claim and (b) to participate in the distribution of funds under the plan. Contrary to the instance case, in In re Alvarado Jurado, an amended plan was confirmed in which the debtor specifically provided that it would fully pay a secured creditor's

claim. However, the debtor did not file a timely proof of claim on behalf of the secured creditor. The debtor filed a proof of claim on behalf of the secured on creditor 54 months after the date of confirmation of the 60-month plan. This court in In re Alvarado Jurado stressed the importance of filing a proof of claim which, if allowed, triggers distributions under a confirmed plan. The court stated the following:

> "Thus, the filing of a proof of claim is not required by the Bankruptcy Code; however, a creditor's failure to timely file a proof of claim may affect its rights under the plan—namely, its ability to participate in the distribution of funds according to the plan. See also 11 U.S.C. §502(b)(9). 'A creditor who elects not to file a claim elects also not to be paid under the plan.' In re Branch, 228 B.R. 831, 835 (Bankr. W.D. Virginia 1998), citing In re Macias, 195 B.R. 659, 662 (Bankr. W.D. Texas 1996). 'The principal consequence of failing to file a proof of claim is that the creditor cannot have an allowed claim, and if it cannot have an allowed claim, then it will not be entitled to distributions under the plan.' Lundin, §275.2" In re Alvarado Jurado, 318 B.R. at 256.

This court held in In re Alvarado Jurado that the debtor's claim filed on behalf of the secured creditor was timely since there is no bar date to file a secured claim but that the disbursement to the secured creditor was limited to the funds received by the Chapter 13 Trustee subsequent to the court's order granting the debtor's motion to file a claim on behalf of secured creditor. In re Alvarado Jurado, 318 B.R. at 258.

Subsequent to the amended proof of claim #4-2, BSPR on September 28, 2012 filed with the court the *Notice of Post Petition Mortgages Fees, Expenses and Charges* by which it informs that: "BSPR filed the claim 4, for the account no. 1399. On July 17, 2012, the claim was amended to include post- petition mortgage payment expenses and/or charges. This notice is the first notice of post-petition fees, expenses and charge." Contrary to BSPR's statements in the *Notice of Post Petition Mortgages Fees, Expenses and Charges,* its proof of claim was amended to include pre-petition arrearages, fees and charges.

On February 26, 2013, the Trustee filed the *Notice of Final Cure Payment* pursuant to Fed. R. Bankr. P. 3002.1(f) in which he listed that for claim #4-2, the claim allowed was in the

amount of $3,396.28 and the amount paid was $3,396.28. This particular Notice included the following language: "[w]ithin 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a Statement as a supplement to the holder's proof of claim on the Debtors, Debtors' Counsel and the Chapter 13 Trustee, pursuant to Fed. R. Bankr. P. 3002.1(g), indicating 1) whether it agrees that the Debtors have paid in full to cure the default paid on the claim; and 2) whether the Debtors are otherwise current on all payments consistent with 11 U.S.C. §1322(b)(5). The statement shall itemize the required cure or post-petition amounts, if any, that the holder contends remain unpaid as of the date of the statement. The statement shall be filed as a supplement to the holder's proof of claim and is not subject to Rule 3001(f). Failure to notify may result in sanctions." (Docket No. 56). BSPR did not file and serve a Statement as a supplement to its proof of claim.

Secured creditor, BSPR has filed with the court contradictory information regarding the pre and post-petition arrearages and charges that were owed by the Debtors. Moreover, BSPR did not object to the Notice of Final Cure Payment that was filed by the Trustee in which it was disclosed that the claim allowed was for $3,396.28 and the amount paid was for $3,396.28. Fed. R. Bankr. P. 3002.1 was designed to prevent this particular type of problem in which Chapter 13 debtors would complete their plan payments and then face undisclosed mortgage arrearages. Fed. R. Bankr. P. 3002.1 provides an opportunity for the debtor to contest these mortgage arrearages during the Chapter 13 case.

Conclusion

For the foregoing reasons, BSPR's *Objection to Final Report and Account* is denied based upon the binding effect of the post-confirmation modified plan. The filing of an amended claim under the facts of this case may not be employed to collaterally attack a final order confirming a Chapter 13 plan. The court also finds that in this case, the secured creditor was given adequate due process not only to object to the Debtors' Chapter 13 plan but also to object to the Debtors' proposed post-confirmation modified plan which was prompted by secured creditor's motion requesting relief from the automatic stay due to failure to make post-petition

mortgage payments. In addition, the secured creditor did not object to the notice of final cure payment pursuant to Fed. R. Bankr. P. 3002.1.

Consequently, the Final Report and Account filed by the Chapter 13 Trustee is approved. Furthermore, the court determines that there are no pre-petition arrears owed by the Debtors as the same were paid pursuant to the confirmed Chapter 13 plan, as modified.

SO ORDERED.

In San Juan, Puerto Rico, this 31st day of July, 2014.

Enrique S. Lamoutte
United States Bankruptcy Judge

-36-